# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Preeti Kohli, | Case No.: 2:23-cv-02090 |
| Plaintiff, | |
| vs. | **AMENDED COMPLAINT** |
| Medical University of South Carolina, Ernest Benjamin Clyburn, MD, individually and in his official capacity, and Ted A. Meyer, MD, individually and in his official capacity, | |
| Defendants. | |

The Plaintiff, Preeti Kohli, MD, by and through her undersigned counsel, complaining of the Defendants, the Medical University of South Carolina ("MUSC"), Ernest Benjamin Clyburn, MD ("Clyburn") and Ted. A. Meyer, MD ("Meyer"), hereby alleges and would show until this Honorable Court the following:

1.      Plaintiff is an individual and resident of New York.  However, and at all times relevant to the matters alleged in this Complaint, Plaintiff was a resident of Charleston County, South Carolina where the unlawful facts complained of in this action were committed.

2.      Defendant MUSC is a federally funded public university with its main campus, as well as its principal offices and place of business, located in Charleston County, South Carolina. MUSC is a governmental entity and/or agency organized under the laws of South Carolina and subject to suit pursuant to the South Carolina Tort Claims Act.

3.      Defendant Clyburn is, upon information and belief, a citizen and resident of South Carolina and was, at all times related to the claims set forth herein, employed by Defendant MUSC as the Designated Institutional Official for Graduate Medical Education.

1

4.      Defendant Meyer is, upon information and belief, a citizen and resident of South Carolina and was, at all times related to the claims set forth herein, employed by Defendant MUSC as the program director of MUSC's otolaryngology program in which Plaintiff was previously enrolled.

5.      Some or all of the unlawful acts being complained of in this action, for which relief is sought, were committed in Charleston County, South Carolina.

6.      Plaintiff, at all times relevant to this action, was employed by Defendant MUSC in Charleston County, South Carolina, where the Plaintiff was also enrolled in a residency training program with the Defendant MUSC.

7.      Jurisdiction and venue before this Court are proper

**PLAINTIFF'S BACKGROUND AND EXPERIENCE IN PROGRAM**

8.      Plaintiff is a medical doctor, having received her medical degree from the State University of New York – Stony Brook University School of Medicine.

9.      Following her graduation from medical school, Plaintiff began her employment with MUSC as a resident physician in the summer of 2017 as was admitted as a resident to complete her training in MUSC's Otolaryngology program (hereinafter "the Program").  The Program was a five-year training program, completion of which would be required for the Plaintiff in order to practice medicine as an otolaryngologist (ENT). As a trainee in the Program, Plaintiff also served as a contract employee, providing services to MUSC's patients pursuant to a yearly contract with MUSC.

10.     Upon information and belief, at all times during her employment and participation in MUSC's Program, Plaintiff, an Indian American woman, was the only minority female in the Program.

11.     At all times during her employment and participation in MUSC's Program, Defendants Clyburn and Meyer had direct oversight of the Program and all enrolled residents, including the Plaintiff.  Specifically, Meyer served as the Program's director and Clyburn served as the Designated Institutional Official for Graduate Medical Education.

12.     Plaintiff experienced various forms of discrimination, harassment, targeting and retaliation in comparison to her mostly white male colleagues while in the Program.  This included being evaluated more harshly and critically by her white male supervisors, which led to her being placed on a performance improvement plan (PIP), being forced to repeat an entire year of training, and then being terminated just prior to the fifth and final year of her residency after she been provided with a contract for the following year.  Plaintiff was also the only resident in the Program disciplined for delayed submission of case logs even though at least three (3) male residents, mostly white, also failed to timely submit case logs and were not similarly disciplined.  Plaintiff was required to take sixty (60) extra hours of call when her similarly situated white male colleagues, some of whose case logs were even later than Plaintiff's, were not required to do so.

13.     Beyond the disparate treatment Plaintiff experienced regarding evaluations, discipline and program status while in the Program, she was routinely subjected to other conduct directed at her on the basis of her race, gender and national origin.

14.     In regard to treatment based on her gender, among other things, Plaintiff was told she needed to wear more makeup, dress differently and to smile more, act "happy" and "try to be more well-liked."  She was also told by Defendant Meyer, a white male, that she did not possess the same "mental capacity" as her three (3) white male colleagues.  White male supervisors were routinely dismissive of women and made documented sarcastic remarks about "National Women Physician's Day."  On several occasions when Plaintiff received positive comments/evaluations

from female physicians, Meyer, the Program's director, dismissed those comments as being "just a girl thing." Her white, male supervisors routinely made extra time to work with white, male residents, but refused to spend such time working with and/or training Plaintiff.

15.     As to her national origin, Plaintiff's mostly white, male supervisors repeatedly and routinely made fun of her name, mocked her ethnic background, and refused to try and pronounce her name correctly, even after being repeatedly provided with the correct pronunciation. One white male attending expressly refused to honor her preference to be addressed by her last name in front of multiple others in the operating room. It was almost immediately after this incident that Plaintiff's residency training contract for the following year was rescinded. Additionally, MUSC's own documentation evidences the fact that Plaintiff's national origin was discussed and considered by the Defendants in making decisions about Plaintiff's employment and inclusion in the Program, including comments by her white, male supervisors about how Plaintiff allegedly "makes you repeat a lot" due to English being her second language.

16.     The above-described treatment Plaintiff experienced was commonplace and at least three (3) former female minority resident employees of MUSC experienced the same type of discriminatory conduct and raised complaints thereabout. In fact, the hostile environment that MUSC has created and/or allowed to exist in the Program is well known by minority females in the medical field, many of whom were warned by current and former residents that MUSC and the Program have a strong reputation for being a difficult and discriminatory environment for minority female physicians.

17.     Plaintiff, understandably upset with the differential, discriminatory and retaliatory treatment she was experiencing in comparison to her white, male colleagues, began objecting to the above-referenced treatment. However, such objections resulted in no corrective action being

taken and led only to Plaintiff being labeled as "angry" and "defensive" by her white, male supervisors, including Meyer, who noted in documentation and in-person to Plaintiff "your demeanor is sour" and other related comments not similarly directed at Plaintiff's white male colleagues, and, ultimately, being terminated from the Program just prior to her fifth and final year.

## PLAINTIFF'S TERMINATION FROM THE PROGRAM

18.    In the spring of 2022, after such time as Plaintiff had already been provided with a contract by MUSC for her fifth and final year in the Program and after such time as Plaintiff had begun objecting to the above-referenced discriminatory treatment by her white male supervisors, MUSC, acting by and through Clyburn and Meyer, involuntarily terminated Plaintiff from her employment and her position in the Program.

19.    The termination of Plaintiff's employment and Program position just prior to her fifth and final year is virtually unheard of and, upon information and belief, Plaintiff is the only otolaryngology resident MUSC has ever dismissed from the Program just prior to the final year of training.

20.    Prior to being provided with notice of termination, Plaintiff received no warnings or indications of any type from Defendants that it was possible that Plaintiff could or was going to be terminated from the Program. Similarly, she was not notified of any specific deficiencies in her performance or abilities, areas that required improvement, or any milestones she had failed to achieve prior to her dismissal just prior to the beginning of her final year of training. When asked why she had received no such warnings, advance notice or opportunities for improvement prior to being notified of her intended dismissal on April 19, 2022, Meyer expressly acknowledged "we didn't want to tell you."

21.    The Defendants' notification of termination to the Plaintiff on April 19, 2022 came

several weeks after MUSC had already provided the Plaintiff with a signed employment contract for the following academic year and two (2) months after MUSC's expressly stated deadline for notifying residents of any non-renewal.

22.    Defendants have attempted to disguise their discriminatory and retaliatory termination of Plaintiff by claiming that the termination of her employment and position in the Program was due to "failure to progress."  However, Plaintiff's termination followed a period in which she was advised that she was improving, had already been provided with a contract for the coming year and had not been informed of any concerns about her performance or about promotion to her final year of residency.  Additionally, notification of her termination was provided at a time when Plaintiff had received written contemporaneous feedback from nearly every attending physician in the ENT department, more than 90% of which expressly stated she was performing at the expected level.

23.    Prior to being notified of Defendants' decision to terminate her at the end of the academic year, Plaintiff had previously repeated her third year and met the standards to be promoted to her fourth year of residency.  She had also completed ten (10) months of her fourth year of residency without any indication that she needed to improve in any material respects.  In fact, and just prior to her dismissal, Plaintiff had been encouraged to work more independently and continued to take senior level system-wide call through April 2022 and for the remainder of the academic year, which fact seems to strongly dispute Defendants' later claims that there were "patient safety" and "professionalism" issues involved in the decision to dismiss Plaintiff from the Program.  Those claims were also disproven by admissions from Clyburn that there had, in fact, been no "professionalism" or "patient safety" issues with the Plaintiff.

24.    After notifying Plaintiff of the termination of her employment and position in the

Program, MUSC, acting by and through its employees, including, but not limited to, Meyer and Clyburn, intentionally and falsely communicated to various individuals that Plaintiff's termination was the result of "professionalism" and "patient safety" issues, a representation Defendants knew to be false and later admitted was false.

25.    Notwithstanding the Defendants' alleged reason for the termination of Plaintiff's employment and position in the Program, Plaintiff remained employed by MUSC until the end of June 2022.  Additionally, and from April 19, 2022 to June 31, 2022, Plaintiff continued to see patients independently and continued to perform surgeries and other procedures without Defendants raising any concerns thereabout.  Additionally, and as is documented in various communications from Meyer, Plaintiff was directed to continue taking system-wide call for MUSC without any of the Defendants ever raising concerns about her doing so.

26.    Following the end of her employment, Defendants have refused to take reasonable actions to assist and allow Plaintiff to be admitted to an alternate otolaryngology program in order to complete her training to become an ENT.  Instead, MUSC, acting by and through its employees, including, but not limited to, Meyer and Clyburn, has, upon information and belief, published untrue and negative statements about the Plaintiff to other otolaryngology programs.  Those communications, along with Defendants' other above-referenced actions, have resulted in the denial of Plaintiff's application to other otolaryngology programs and have prevented the Plaintiff from completing her otolaryngology training so as to be able to practice medicine as an ENT.

27.    Following the end of her employment with the MUSC on June 31, 2022, Plaintiff filed a Charge of Discrimination against MUSC, alleging claims for discrimination, in regard to race, national origin and gender, and retaliation in violation of Title VII of the Civil Rights Act of 1964.  Plaintiff's Charge, filed on December 30, 2022, was still pending as of the date of filing of

this Complaint. Plaintiff has now administratively exhausted those claims as demonstrated by the

Notice of Right to Sue the South Carolina Human Affairs Commission issued to Plaintiff on July

13, 2023, a copy of which is attached as **Exhibit A**.

**FOR A FIRST CAUSE OF ACTION**
**(Breach of Contract – Defendant MUSC)**

28.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs with the

same force and effect as if fully set forth herein.

29.     As set forth above, MUSC provided Plaintiff with a signed contract of employment

for her fifth and final year of residency in the Program in or around March of 2022, which also

included an obligation to retain Plaintiff to complete her otolaryngology training in the Program.

Plaintiff accepted this offer, creating a binding contract of employment the Plaintiff and MUSC.

30.     MUSC also provided Plaintiff with a handbook and various policies related to the

Program, which handbook and policies contained various contractual obligations to Plaintiff,

including an obligation to notify Plaintiff by a certain date if she would not be offered a contract

of employment and position in the Program for her fifth and final year of training.

31.     Plaintiff performed all of her obligations under the parties' agreement and MUSC's

handbook and policies by accepting MUSC's offer of employment, in continuing to work for the

MUSC, in seeing MUSC's patients and in not seeking alternate employment or a position to

complete the fifth and final year of her otolaryngology training with another program.

32.     Regardless, MUSC breached the parties' agreement by unilaterally terminating the

contract, including the Plaintiff's employment and position in the Program, for Plaintiff's final

year in the Program without cause. MUSC further breached the contractual obligations set forth

in its handbook and policies by not providing Plaintiff with timely notice that MUSC intended to

rescind its above-referenced contract with the Plaintiff and not allowing her to retain her position

8

in the Program for the fifth and final year of training.

33.     As a direct and proximate result of said breaches on the part of MUSC, Plaintiff has incurred actual damages for which she is entitled to an award against MUSC therefore.

**FOR A SECOND CAUSE OF ACTION**
**(Breach of Contract Accompanied by a Fraudulent Act – Defendant MUSC)**

34.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

35.     As set forth above, MUSC provided Plaintiff with a signed contract of employment for her fifth and final year of residency in the Program in or around March of 2022, which also included an obligation to retain Plaintiff to complete her otolaryngology training in the Program. Plaintiff accepted this offer, creating a binding contract of employment the Plaintiff and MUSC.

36.     MUSC also provided Plaintiff with a handbook and various policies related to the Program, which handbook and policies contained various contractual obligations to Plaintiff, including an obligation to notify Plaintiff by a certain date if she would not be offered a contract of employment and position in the Program for her fifth and final year of training.

37.     Plaintiff performed all of her obligations under the parties' agreement and MUSC's handbook and policies by accepting MUSC's offer of employment, in continuing to work for MUSC, in seeing MUSC's patients and in not seeking alternate employment or a position to complete the fifth and final year of her otolaryngology training with another program.

38.     Regardless, MUSC knowingly and intentionally breached the parties' agreement by unilaterally terminating the contract, including the Plaintiff's employment and position in the Program, for Plaintiff's final year in the Program without cause.  MUSC further breached the contractual obligations set forth in its handbook and policies by not providing Plaintiff with timely notice that MUSC intend to rescind its contract with the Plaintiff and not allowing her to retain her

position in the Program for the fifth and final year of training.

39.    In refusing to honor its contract with the Plaintiff and its various contractual obligations to the Plaintiff, as set forth above, MUSC knowingly and intentionally reported to the Plaintiff that its decision had been based on "professionalism" and "patient safety" issues. However, MUSC knew those representations to be false, and made said representations with the intent of dissuading Plaintiff from pursuing any action related to the termination of her employment and position in the Program.

40.    As a direct and proximate result of said breaches on the part of MUSC, accompanied by MUSC's knowingly and intentionally false representations to the Plaintiff, Plaintiff has incurred actual damages for which she is entitled to an award or actual and punitive damages against MUSC therefore.

### FOR A THIRD CAUSE OF ACTION
**(Defamation – Defendants MUSC & Meyer)**

41.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

42.    As set forth in Paragraphs 23 and 24 above, MUSC, acting by and through its employees and representatives, has made knowingly negative and false statements about Plaintiff to various third parties, including other physicians and otolaryngology programs.

43.    Said defamatory communications have been published by various employees and representatives of MUSC, including Meyer, who made said communications in both his individual and official capacity with and on behalf of MUSC.

44.    Said knowingly false and defamatory statements were made in the presence of and/or published to various third parties and were made by MUSC and Meyer with the intent of, among other things, harming Plaintiff's reputation, preventing her from staying in MUSC's

Program and preventing Plaintiff from being admitted to an alternate otolaryngology program to finish her fifth and final year of training.

45.    As a direct and proximate result of the negative and untrue statements made by MUSC and Meyer about Plaintiff, Plaintiff has suffered damage to her reputation, her ability to find a position in another otolaryngology program to finish her fifth and final year of employment and her related ability to obtain employment and practice as an ENT.

46.    As a result of MUSC's and Meyer's above-referenced conduct and the resulting damages to Plaintiff, Plaintiff is entitled to an award of actual and punitive damages against Defendants MUSC and Meyer.

## FOR A FOURTH CAUSE OF ACTION
### (42 U.S.C. §1983: Denial of 14th Amendment Procedural Due Process – Defendants Meyer & Clyburn)

47.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

48.    The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." A similar right is stated in the Fifth Amendment to the United States Constitution.

49.    In this case, Defendants Meyers and Clyburn are state actors subject to the Fourteenth Amendment.

50.    Section 1983 of Title 42 of the U.S. Code provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

11

51.    A person has a protected property interest in pursuing her education, as well as in future educational and employment opportunities and occupational liberty, of which she cannot be deprived without due process.

52.    Prior to her dismissal from the Program, Plaintiff was a fine student in good standing at MUSC. She maintained a constitutionally protected property interest in her continued enrollment at MUSC, to be free from arbitrary dismissal, which is recognized in the policies, courses of conduct, practices and understandings established by MUSC.

53.    Plaintiff's constitutionally protected property interest further arises from the express and implied contractual relationship between MUSC and the Plaintiff.

54.    MUSC, a public university established by the State of South Carolina, and the individual Defendants Meyer and Clyburn, as agents of MUSC and individually, have a duty to provide students equal protection and due process of law by and through any and all policies and procedures set forth by MUSC.

55.    Fourteenth Amendment due process protections are required in higher educational disciplinary proceedings. At a minimum, the Supreme Court has made clear that there are two basic due process requirements: (1) notice, and (2) an opportunity to be heard.

56.    Where a student at a public university, like MUSC, faces dismissal for alleged professionalism issues, a serious property interest is at stake; a dismissal will have a lasting negative impact on the student's life, so heightened due process protections including a hearing, with the right to present evidence, cross-examine adversarial witnesses and to call witnesses may be required.

57.    Plaintiff, as an MUSC student, faced and was provided with notice of dismissal for alleged professionalism issues. Accordingly, the Due Process provisions of the Fourteenth

Amendment to the United States Constitution applied to both the dismissal and appeal processes that MUSC utilized in her case.

58.     Plaintiff obeyed all institutional rules when she was provided with notice of dismissal from MUSC and its Program, allegedly for professionalism and patient safety issues.

59.     Plaintiff was entitled to a process commensurate with the seriousness of the allegations and the repercussions she was facing in light of the notice of dismissal and/or nonrenewal that was provided to her by the Defendants in April of 2022.

60.     The allegations against Plaintiff in this case and her dismissal from MUSC's Program resulted in expulsion from the Program before the Plaintiff's fifth and final year of training and a permanent mark on Plaintiff's transcript that will have lifelong ramifications for Plaintiff with respect to her education, employment, and reputation.

61.     By way of Plaintiff's dismissal from the Program without prior notice and in the appeals process that followed notification of Plaintiff's dismissal from the Program, Defendants MUSC, Meyer and Clyburn violated Plaintiff's clearly established rights under the Due Process Clause of the Fourteenth Amendment through their deprivation of the minimal requirements of procedural fairness by, without limitation:

      a.    Providing Plaintiff with no prior notice of the issues resulting in dismissal;

      b.    Failing to engage in any genuine investigation into the professionalism concerns initially raised in connection with Plaintiff's dismissal from the Program;

      c.    Meeting in private to determine the validity of any professionalism or safety concerns related to Plaintiff without providing Plaintiff an opportunity to defend herself and without fully considering all positive feedback from Plaintiff's supervisors;

      d.    Dismissing Plaintiff without prior and/or timely notice under MUSC's expressly stated policies;

e.   Failing to provide Plaintiff with a hearing until the appeal hearing, after the decision to dismiss her had already been made without any notice and after she had already been provided with notice of her dismissal from the Program;

f.   Allowing biased decision makers without adequate experience with Plaintiff and her performance to make the decision regarding Plaintiff's dismissal from the Program;

g.   Excluding individuals with more direct knowledge and experience with Plaintiff and her performance from the decision regarding Plaintiff's dismissal from the Program;

h.   Excluding from the appeals panel individuals with direct knowledge and experience with Plaintiff and her performance; and

i.   Refusing to consider Plaintiff's positive reviews and feedback and only presenting information that was detrimental to Plaintiff.

62.   Defendants Meyer and Clyburn deprived Plaintiff of her liberty and property interests without affording her basic due process, including but not limited to, her right to a fair adjudication free of bias and full and objective criteria, her right to be heard by an impartial factfinder, her right to question and challenge the credibility of the allegations and claims against her, and the right to appear and present evidence and witnesses in support of herself prior to dismissal from the Program. Plaintiff was further denied her right to a fair appeal and her dreams of practicing as an ENT, for which she spent years and funds seeking to achieve, are imperiled and unlikely. She has and will suffer lifelong damages as a result of the Defendants' actions.

63.   Defendants Meyer and Clyburn, as well as other agents, representatives, and employees of MUSC, intentionally, willfully, wantonly, oppressively and maliciously violated Plaintiff's due process rights in the adjudication of her dismissal from the Program and in the appeals adjudication that followed notification of said dismissal being provided to the Plaintiff.

14

64.     As a result of the due process violations noted above, Plaintiff continues to suffer ongoing harm, including damages to her reputation, personal and professional, and other non-economic and economic damages. In particular, dismissal from the Program denied Plaintiff the benefits of completion of her medical education, prevented her from reaching her longstanding goal of practicing medicine as an ENT and damaged Plaintiff's reputation, as well as her future career and academic prospects.

65.     Accordingly, Defendants Meyer and Clyburn are liable to Plaintiff in their individual capacities for violation of 42 U.S.C. § 1983 and Due Process Clause of the Fourteenth Amendment, and for all damages arising therefrom.

66.     As a direct and proximate result of the above conduct, Plaintiff sustained damages, including, without limitation, emotional distress, loss of educational opportunities, loss of career opportunities, economic injuries and other direct and consequential damages.

67.     Plaintiff further seeks punitive damages against Defendants Meyer and Clyburn for their intentional, willful, biased and unconstitutional and conduct.

68.     Defendants Meyer and Clyburn, as a result of their positions of employment with MUSC, would be the persons responsible for the injunctive relief requested herein, including clearing Plaintiff's record of any findings supporting Plaintiff's dismissal from the Program and reinstating Plaintiff as a resident physician in good standing at MUSC and in its Program.

69.     As a result of the foregoing, Plaintiff has suffered damages, including punitive damages, in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects,

plus prejudgment interest, attorneys' fees, expenses, costs and disbursements, as well as the aforementioned injunctive relief directed at MUSC.

## FOR A FIFTH CAUSE OF ACTION
### (42 .S.C. §1981 Denial of Equal Protection: Race Discrimination – Defendants Meyer & Clyburn)

70.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

71.     The Civil Rights Act of 1964, 42 U.S.C. Section 1981 prohibits discrimination based on race, as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

72.     The phrase "to make and enforce contracts" refers to the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and condition of the contractual relationship.

73.     Plaintiff entered into a contract with MUSC, both an express employment contract and an express and implied contract when she enrolled in MUSC's Program as a resident physician to complete her training in otolaryngology.

74.     Notwithstanding, and as set forth in greater detail above, Defendants subjected Plaintiff to disparate treatment on numerous occasions, which ultimately resulted in Plaintiff's unlawful dismissal because of her race and other racial animus of Defendants as set forth in greater detail above.

75.     Upon information and belief, Defendants' express and pervasive bias permeated Plaintiff's employment and educational experience at MUSC, as well as the determinations and

proceedings related to the decision to terminate Plaintiff's employment and position in the Program without prior notice, warning and/or opportunity for improvement.

76.    Defendants' actions were motivated by racial animus and were taken in malicious, willful, wanton, deliberate indifference to, and reckless disregard of Plaintiff's rights as guaranteed by 42 U.S.C. § 1981.

77.    As a direct and foreseeable and proximate result of Defendants' intentional illegal racial discrimination, Plaintiff has suffered damages, including actual and punitive damages, in an amount to be determined at trial, including without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements, as well as the aforementioned injunctive relief directing MUSC to clear Plaintiff's record and readmit her to the Program.

## <u>FOR A SIXTH CAUSE OF ACTION</u>
**(Violation of Title VI of the Civil Rights Act of 1964 – Defendant MUSC)**

78.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

79.    Title VI forbids any person or institution which receives federal funds to discriminate on the basis of race, color, or national origin. Title VI claims can be predicated on discriminatory intent, however intentional discrimination can also be inferred by a defendant's deliberate indifference to different treatment.

80.    MUSC, as a public university established by the state of South Carolina, receives federal funds.

81.    As set forth in greater detail above, Plaintiff was exposed to discrimination by MUSC on the basis of her race and national origin as an Indian American woman who received

different treatment on account of her race and national origin in regard to, among other things, her terms and conditions of employment, her educational experience and training, disciplinary action and the ultimate termination of her employment and her position in the Program.

82.    The above-referenced allegations of discrimination, as well as the damages caused by same, are set forth in greater detail above.

83.    As a direct and proximate result of the afore-said discrimination, Plaintiff is entitled to an award against Defendants of all damages and relief made available under Title VI, including all such relief, injunctive and otherwise, set forth in this Complaint.

**FOR A SEVENTH CAUSE OF ACTION**
**(Violation of Title IX of the Education Amendments of 1972 – Defendant MUSC)**

84.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

85.    Title IX of the Education Amendments of 1972 provides, in relevant part, that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

86.    Title IX of the Education Amendments of 1972 applies to all public and private educational institutions that receive federal funding, which includes Defendant MUSC.

87.    Title IX is enforceable through a private right of action.

88.    As set forth in greater detail above, Plaintiff was exposed to discrimination by MUSC on the basis of her gender as a woman who received different treatment on account of her gender in regard to, among other things, her terms and conditions of employment, her educational experience and training, disciplinary action and the ultimate termination of her employment and her position in the Program.

89.    Upon information and belief, MUSC's treatment of the Plaintiff was informed by and part of institutional, systemic gender bias that exists at MUSC and, more specifically, within the Program.

90.    The above-referenced discrimination in violation of Title IX caused Plaintiff to sustain substantial injury, damage, and loss, including without limitation, emotional distress, psychological damages, loss of education, loss of future educational and career opportunities, reputational damages, economic injuries and other direct and consequential damages.

91.    As a result, Plaintiff is entitled to an award of damages, including actual and punitive damages, in an amount to be determined at trial, including without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements, as well as the aforementioned injunctive relief directing MUSC to clear Plaintiff's record and readmit her to the Program.

### FOR AN EIGHTH CAUSE OF ACTION
**(42 U.S.C. §1985: Conspiracy to Violate Civil Rights – Defendants Meyer & Clyburn)**

92.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

93.    42 U.S.C. §1985(3) prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws."

94.    To successfully demonstrate a claim under §1985, a plaintiff must show (1) a conspiracy between two or more people; (2) for the purpose of depriving a person or class of people of the equal protection of the laws or of equal privileges and immunities under the laws;

and (3) an act committed in furtherance of the conspiracy that injures a person or deprives him of a right or privilege of a citizen of the United States.

95.     Defendants Meyer and Clyburn, in combination with other unknown employees of MUSC, formed a conspiracy to discriminate against Plaintiff on the basis of her race, national origin and gender, thereby depriving her of equal protection of the laws.

96.     Defendants orchestrated a secretive decision-making process, without notice or opportunity for Plaintiff to be heard, to terminate her employment and dismiss her from the Program with the express intent to dismiss Plaintiff from the Program and prevent her from completing her otolaryngology training.

97.     Defendants worked in concert amongst each other, as well as with other MUSC employees, to present only negative comments and feedback about Plaintiff while dismissing and/or suppressing all relevant and positive comments and feedback about the Plaintiff and her performance in order to terminate her employment and position in the employment and provide alleged justification for such action, which action was taken after MUSC's deadline therefore and after Plaintiff had already been provided with a signed contract for the following year from MUSC.

98.     By discriminating against Plaintiff on the basis of her race, national origin and gender in the various manners set forth more fully above, Defendants demonstrated a class-based animus behind their conspiracy.

99.     Defendants acted in furtherance of the conspiracy when they, by way of example and not limitation:

a. Dismissing Plaintiff without proper notice and/or prior warning;

b. Dismissing Plaintiff past the deadline for doing so and after she had already been provided with a contract for the coming year;

c. Dismissing Plaintiff without affording her an opportunity to be heard;

d. Not properly considering all positive evidence and feedback in regard to Plaintiff's performance;

e. Providing untruthful reasons for the Plaintiff's dismissal;

f. Intentionally failing to advise Plaintiff of any concerns about her performance or areas in which she needed to improve to be able to stay in the Program

g. Intentionally failing to include only individuals with actual experience with the Plaintiff on the group who made the decision to terminate her employment and position in the Program; and

h. Knowingly ignoring and violating MUSC's stated policies regarding dismissal from the Program and timing thereof.

100. As demonstrated above, Defendants' actions were motivated by animus related to Plaintiff's race, national origin and gender, and were taken in malicious, willful, wanton, deliberate indifference to, and reckless disregard of Plaintiff's rights.

101. As a direct, foreseeable and proximate result of Defendants' intentional and unlawful discrimination, Plaintiff has suffered damages, including actual and punitive damages, in an amount to be determined at trial, including without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements, as well as the aforementioned injunctive relief directing MUSC to clear Plaintiff's record and readmit her to the Program.

## FOR A NINTH CAUSE OF ACTION
### (Title VII of the Civil Rights Act of 1964 – Gender Discrimination)

102. Plaintiff re-alleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

103.    Plaintiff is a female and, therefore, falls within the class of employees protected by Title VII of the Civil Rights Act of 1964, as amended (Title VII).

104.    Defendants discriminated against Plaintiff on the basis of her gender by treating her differently than her similarly situated male colleagues, as set forth more fully above, including, but not limited to, in regard to work expectations, evaluations, training, Program progression, disciplinary action and the other terms and conditions of her employment.

105.    Defendants further discriminated against Plaintiff on the basis of her gender by knowingly allowing Plaintiff's male colleagues and supervisors to engage in the conduct more fully set forth above.  Such conduct includes, but is not limited to, such males creating a hostile work environment by treating her differently than male employees, making gender-directed comments to and criticism of Plaintiff, by telling Plaintiff she did not possess the same mental capacity as her male colleagues, by making sarcastic comments about female physicians, by dismissing positive evaluations from female physicians, by refusing to spend the same amount of time working with Plaintiff as they did with her male colleagues and by allowing Plaintiff's male supervisors to act in a verbally abusive manner in the workplace.  Plaintiff contends that all such conduct was severe and pervasive conduct, was based on her gender and was so intolerable that no reasonable employee could be expected to endure the same treatment.

106.    By virtue of the above-outlined conduct, Defendants subjected Plaintiff to unlawful sex discrimination in violation of Title VII.

107.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer damages, and is entitled to an award of all relief available under Title VII, including back and front pay, value of lost benefits, compensatory damages, punitive damages, attorney fees, costs and pre- and post-judgment interest.

## FOR A TENTH CAUSE OF ACTION
### (Title VII of the Civil Rights Act of 1964 – Race Discrimination)

108.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

109.     Plaintiff is Indian American and, therefore, falls within the class of employees protected by Title VII of the Civil Rights Act of 1964, as amended (Title VII).

110.     Defendants discriminated against Plaintiff on the basis of her race by treating her differently than her similarly situated white colleagues, as set forth more fully above, including, but not limited to, in regard to work expectations, evaluations, training, Program progression, disciplinary action and the other terms and conditions of her employment.

111.     Defendants further discriminated against Plaintiff on the basis of her race by knowingly allowing Plaintiff's white colleagues and supervisors to engage in the conduct more fully set forth above.  Such conduct includes, but is not limited to, creating a hostile work environment by treating her differently than white employees, by telling Plaintiff she did not possess the same mental capacity as her white male colleagues, by refusing to spend the same amount of time working with Plaintiff as they did with her white colleagues and by allowing Plaintiff's male supervisors to act in a verbally abusive manner in the workplace.  Plaintiff contends that all such conduct was severe and pervasive conduct, was based on her race and was so intolerable that no reasonable employee could be expected to endure the same treatment.

112.     By virtue of the above-outlined conduct, Defendants subjected Plaintiff to unlawful race discrimination in violation of Title VII.

113.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer damages, and is entitled to an award of all relief available under Title

VII, including back and front pay, value of lost benefits, compensatory damages, punitive damages, attorney fees, costs and pre- and post-judgment interest.

## FOR AN ELEVENTH CAUSE OF ACTION
**(Title VII of the Civil Rights Act of 1964 – National Origin Discrimination)**

114.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

115.    Plaintiff is Indian American and, therefore, falls within the class of employees protected by Title VII of the Civil Rights Act of 1964, as amended (Title VII).

116.    Defendants discriminated against Plaintiff on the basis of her national origin by treating her differently than her similarly situated colleagues outside of her national origin, as set forth more fully above, including, but not limited to, in regard to work expectations, evaluations, training, Program progression, disciplinary action and the other terms and conditions of her employment.

117.    Defendants further discriminated against Plaintiff on the basis of her national origin by knowingly allowing Plaintiff's white colleagues and supervisors to engage in the conduct more fully set forth above.  Such conduct includes, but is not limited to, creating a hostile work environment by making fun of the Plaintiff's name, mocking her ethnic background, refusing to pronounce her name correctly, by refusing to honor her preference as to use of her last name, by taking Plaintiff's national origin into consideration in making decisions about Plaintiff's employment and position in the Program, by mocking the fact that English was not the Plaintiff's first language and by allowing Plaintiff's supervisors to act in a verbally abusive manner in the workplace.  Plaintiff contends that all such conduct was severe and pervasive conduct, was based on her national origin and was so intolerable that no reasonable employee could be expected to endure the same treatment.

118. By virtue of the above-outlined conduct, Defendants subjected Plaintiff to unlawful discrimination in violation of Title VII.

119. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer damages, and is entitled to an award of all relief available under Title VII, including back and front pay, value of lost benefits, compensatory damages, punitive damages, attorney fees, costs and pre- and post-judgment interest.

### FOR A THIRTEENTH CAUSE OF ACTION
**(Title VII of the Civil Rights Act of 1964 - Retaliation)**

120. Plaintiff re-alleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

121. Plaintiff participated in protected conduct under Title VII by complaining to Defendants about the above-referenced discriminatory treatment on multiple occasions and to various members of management.

122. As a direct and proximate result of Plaintiff's pursuit of her legal rights under Title VII, including complaints to Defendants about discrimination she was being subjected to on the basis of her gender, race and national origin, Defendants intentionally retaliated against Plaintiff in multiple respects more fully outlined above, including, but not limited to, the termination of Plaintiff's position in the Program and her employment with Defendant MUSC.

123. Defendants' adverse treatment of Plaintiff, as more fully addressed and detailed above, was at least partially in retaliation for Plaintiff's pursuit of her rights under Title VII and the various complaints she made to Defendants about the discrimination she was suffering in the workplace and in the Program. This is directly evidenced by Defendants telling Plaintiff that she had been labeled as "angry," "defensive," "sour" and having a "sour demeanor," all of which was clearly taken into account in Defendants' decision to terminate Plaintiff's employment and

position in the Program.

124.   As a direct and proximate result of Defendants' illegal retaliation, Plaintiff has suffered and will continue to suffer damages, and is entitled to an award of all relief available under Title VII, including lost wages, lost benefits, compensatory and punitive damages, and all attorney's fees and costs.

WHEREFORE, Plaintiff respectfully requests a trial by jury on each of her claims against Defendants and prays for an award of all available damages and relief against Defendants, including, but not limited to, an award of all compensation to which she is entitled under her contracts with Defendant, lost wages, including lost fringe and employee benefits, liquidated damages, compensatory damages, punitive damages, attorneys' fees and costs, and interest, injunctive relief, and for any such other and further relief as the Court may deem just and proper.

Respectfully submitted,

s/Courtney C. Atkinson
Courtney C. Atkinson, SC Bar # 71992
METCALFE & ATKINSON, LLC
1395 S. Church Street
Greenville, SC 29605
Telephone (864) 214-2319
Facsimile  (864) 214-3067
*Attorneys for Plaintiff Preeti Kohli, MD*

August 25, 2023
Greenville, South Carolina